IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **VIRGINIA WILLIAMS** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  **3:20-CV-00741** |
| ) | |
| **SUGAR SHACK DONUTS LLC,** ) | **TRIAL BY JURY DEMANDED** |
| ) | |
| **SSD STAFFING LLC, and** ) | |
| ) | |
| **IAN KELLEY** ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Virginia Williams ("Plaintiff" or "Williams"), by counsel, and alleges as follows against Defendants Sugar Shack Donuts LLC, SSD Staffing LLC, and Ian Kelley (collectively "Defendants"):

### PRELIMINARY STATEMENT

1. This is an action pursuant to Title VII of the Civil Rights Act ("Title VII") and Virginia state law to correct and remedy the unlawful employment practices complained of herein.

2. Plaintiff was employed by Defendants when she experienced unlawful *quid pro quo* sex discrimination, was subjected to sexual harassment, unlawfully retaliated against, and ultimately wrongfully discharged from employment.

### JURISDICTION AND VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S. § 2000e-5(f) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

4. Venue is proper for this Court pursuant to 28 U.S.C. § 1391 as the Defendants reside in the judicial district and division and a substantial part of the events giving rise to the claims occurred in the judicial district and division.

5. Plaintiff has exhausted all required administrative procedures and timely filed and amended a formal complaint with the Equal Employment Opportunity Commission ("EEOC") for her Title VII claims. The EEOC has issued a Notice of Right to Sue, and this suit has been brought within 90 days of Plaintiff's receipt of the such Notice.

## PARTIES

6. Plaintiff is a citizen of the United States and a resident of Richmond, Virginia. Plaintiff was employed by Defendants at all times relevant hereto.

7. Sugar Shack Donuts LLC is a Chesterfield County, Virginia based company that owns and operates doughnut shops in Virginia. In 2018 and 2019, during the events described below, Sugar Shack Donuts LLC owned and/or operated and/or was affiliated with (10) or more locations in Virginia and Washington, D.C. On information and belief, Sugar Shack Donuts LLC currently owns and operates two (2) locations in Virginia. Defendant Sugar Shack Donuts LLC was referred to by company employees as "the mothership" because it controlled operations at the various store locations, including but not limited to the hiring and firing of employees, purchasing, pricing, and marketing.

8. SSD Staffing LLC is a Chesterfield County, Virginia based company that operates payroll for employees across the various Sugar Shack Donuts LLC locations. Defendants Sugar Shack Donuts LLC and SSD Staffing LLC share the same principal place of business and registered agent. Defendants Sugar Shack Donuts LLC and SSD Staffing LLC conduct business through common management, control, and integration. Defendants Sugar Shack Donuts LLC and

SSD Staffing LLC (collectively hereinafter referred to as "Sugar Shack") were Plaintiff's joint employers within the meaning of Title VII.

9. Defendant Ian Kelley ("Kelley") is citizen of the United States and a resident of Chesterfield County, Virginia. Kelley was a founder of Sugar Shack and serves as the CEO. On information and belief, Kelley is the majority owner of Sugar Shack Donuts LLC and SSD Staffing LLC. Kelley closely controls Sugar Shack's operations and is directly involved in the hiring and terminating of Sugar Shack management, including store managers.

**FACTUAL ALLEGATIONS**

10. In August 2016, while still a high school student, Williams was hired by Sugar Shack to work part-time as a front house employee assisting customers at the Midlothian, Virginia location. Plaintiff graduated high school in June 2017 and worked full-time for Sugar Shack during the summer of 2017 at various locations including Midlothian, Hanover, Parham Road/Henrico, and the mobile operation.

**Williams is Groomed for a *Quid Pro Quo* Relationship by CEO Kelley**

11. During her employment, Kelley (then approx. 32 years old and married with children) paid unusually close attention to Williams when he visited her job sites. Kelley repeatedly asked Plaintiff about her personal romantic relationships when they would interact at work. Kelley also awarded Williams an "exceptional employee" award, despite Williams having just started working with the company. Kelley's preferential treatment and grooming of Williams was noticed by other employees and caused friction in the workplace.

12. In late July 2017, Williams turned 18 years old. Williams had planned to begin college in another part of the state in the fall and end her Sugar Shack employment. However, toward the end of summer 2017, Kelley promised Williams he would promote her to be a manager

for the anticipated opening of the new Charlottesville, Virginia Sugar Shack location next summer. Plaintiff therefore deferred her college enrollment to stay with the company. At only 18 years old, Williams would be the youngest store manager in the company.

13. While construction of the Charlottesville location was being completed, Williams continued to work at the various other Sugar Shack locations while also preparing the Charlottesville store for opening.

**CEO Kelley Sexually Harasses Williams on an Ongoing Basis**

14. In the summer of 2018, at or around the time of opening the Charlottesville store, Kelley and Williams were in the car together, alone, running errands for the store when Kelley asked Williams to perform oral sex on him. Kelley implied to Williams that he had given her a significant job advance by promoting her to store manager at only 18 years old and that she needed to show him gratitude and return the favor to him. Feeling that she would lose her job and/or promotion if she did not comply, Williams felt she had no choice but to agree to his request.

15. Soon after, Kelley offered for the company to pay for most of the rent for Williams' apartment in Charlottesville and Williams accepted. On information and belief, this was a benefit not provided to any other store managers or employees and Kelley attempted to conceal the arraignment from others in Sugar Shack management/ownership. The offer to pay for Williams' apartment was soon followed by another request from Kelley to Williams for oral sex. Again, feeling that she would lose her job and/or company-paid apartment if she did not comply, Williams agreed to his request. On another occasion, Kelley told Williams he would pay for a new bed at her apartment if she gave him oral sex.

16. From approximately June 2018 through January 2019, Kelley continued to request that Williams perform oral sex and/or manual sex on him while they were working on an ongoing

4

basis. On one such occasion at the Charlottesville store, he held the door to the back-office closed so that Williams could not exit the room until she performed oral sex on him. During this timeframe, Kelley also told Williams to provide sexual pictures of herself to him via text message. Again, fearing for her job, she complied.

17. Williams never requested, and Kelley never offered, for him to perform sexual acts on Williams.

18. In January 2019, when Williams was covering a shift at the Hanover store, Kelley requested that they "talk and take a drive." Once in his car, Kelley again demanded Williams perform oral sex on him. Fearing for her job, she complied. Kelley then told her to deny that anything sexual happened between them if asked by others at the company.

**Williams Reports the Sexual Harassment**

19. By January 2019, Sugar Shack had grown to 10+ locations and 201+ employees; however, Sugar Shack still had no Human Resources department or HR-dedicated employee (Kelley, as CEO, was in charge of HR issues for the company). Moreover, Sugar Shack had no sexual harassment policy or reporting procedure.

20. Nonetheless, in late January 2019, Williams could no longer take the pressure of Kelley having control over her and she told the company's district manager about the sexual harassment and hostile work environment she had endured under Kelley. On information and belief, no investigation took place and no action was taken against Kelley because of her report. Williams thereafter did her best to avoid interacting with Kelley and being in situations where he could sexually proposition her.

21. In early 2019, Kelley became entangled in various disputes with his co-owners and company management and disengaged from the day to day operations of Sugar Shack.

22.     Soon after, Sugar Shack, for the first time, brought-in an HR consultant to examine the company's personnel practices under Kelley. In June 2019, Williams reported the above described sexual harassment and hostile work environment to the HR consultant and a minority-owner of Sugar Shack. They told Williams it was a bad situation and that they would ensure it was remedied. However, no actual follow-up occurred, and Williams was not informed of the results of any further investigation into the matter.

**Sugar Shack and Kelley Retaliate Against Williams**

23.     Instead, in approximately July 2019, Kelley began to re-engage in the day to day operations of the company; and, on information and belief, took a series of retaliatory actions against Williams to try to force her to contact him. Sugar Shack (on information and belief, via Kelley), suspended Williams' access to the store point of sale ("POS") system, removed her access to the store's Facebook page and e-mail account, and suspended her access to company-wide social media pages, thereby making it difficult for Williams to complete her job duties as store manager.

24.     In September 2019, Williams filed EEOC Charges of Discrimination alleging sex discrimination and retaliation in violation of the Title VII and immediately put Sugar Shack on notice of same.

25.     Thereafter, Sugar Shack escalated its retaliation campaign against Williams by continuing to remove access to accounts and systems Williams needed to perform her job including Square, POS, and social media accounts. Moreover, Sugar Shack terminated the HR consultant and suspended Williams' direct supervisor so that she would have no one in the company to report to, except Kelley.

26.     In November 2019, Williams was advised that the ABC license for her store had not been renewed by Kelley and/or Sugar Shack, even though she had raised the issue numerous

times with management. She was then told her store would be "temporarily" closed because of the loss of the ABC license. In early December 2019, Williams was advised that her store would be closed indefinitely, and her employment was terminated. On information and belief, Kelley directed each of the above actions.

27. Williams requested to be employed in another capacity with Sugar Shack as several locations had posted that they were hiring, but her request was denied and she soon learned that Sugar Shack managers were specifically instructed, via Kelley, not to give her shifts or otherwise hire her at the various other Sugar Shack locations that remained open. Additionally, Williams was not paid her full salary upon termination. On information and belief, other similarly situated employees were paid their full salary for the pay period when their store was closed. Finally, upon termination, Williams was denied access to her personal property at the store. On information and belief, Kelley directed each of the above actions.

### COUNT I
### Title VII
### Sex Discrimination – Sexual Harassment/Hostile Work Environment
### (Against Sugar Shack Donuts LLC and SSD Staffing LLC)

28. Plaintiff incorporates by reference and re-alleges the proceeding paragraphs as though fully set forth herein.

29. By reason of each and every act alleged herein, and the pattern, practice, custom and usage of which said acts are a part, Plaintiff suffered severe and pervasive, unwelcome sex and gender based conduct by her employer which altered the conditions of her employment and created a hostile and offensive working environment, to include the *quid pro quo* conduct described above, in violation of Title VII. Such actions were undertaken by Kelley who, as the CEO, served in a supervisory capacity and had the ability to terminate Plaintiff's employment.

30. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including lost wages and benefits, mental anguish, pain, suffering, consequential damages, medical expense, litigation expenses including attorneys' fees, and other injury.

## COUNT II
## Title VII
## Retaliation
### (Against Sugar Shack Donuts LLC and SSD Staffing LLC)

31. Plaintiff incorporates by reference and re-alleges the proceeding paragraphs as though fully set forth herein.

32. Plaintiff opposed the sexually hostile work environment by reporting same to the district manager, HR consultant, and part-owner and by filing an EEOC Charge of Discrimination, thereby engaging in activity protected by Title VII.

33. In response, Defendants adversely affected the terms and conditions of Plaintiff's employment, terminated Plaintiff's employment, and refused to transfer or otherwise re-hire her within the company.

34. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including lost wages and benefits, mental anguish, pain, suffering, consequential damages, medical expense, litigation expenses including attorneys' fees, and other injury.

## COUNT III
## Wrongful Discharge in Violation of Virginia Public Policy
### (Against all Defendants)

35. Plaintiff incorporates by reference and re-alleges the proceeding paragraphs as though fully set forth herein.

36. Virginia Code § 18.2-344, and the public policy underlying it, make it unlawful in the Commonwealth for any person to engage in public sexual fornication.

37. Plaintiff was discharged from employment based on her refusal to continue to engage in a criminal act with Defendant Kelley. Defendant Kelley was directly involved in the decision to terminate Plaintiff's employment. Such termination violates the public policy of Virginia underlying Va. Code § 18.2-344.

38. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer injury and damages including lost wages and benefits, mental anguish, pain, suffering, consequential damages, medical expense, litigation expenses including attorneys' fees, and other injury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Virginia Williams requests judgment against Defendants as follows:

A. For an award of compensatory and punitive damages in the amount of $200,000, plus back-pay damages, with interest at the prevailing rate, on Counts I and II;

B. For an award of actual damages and compensatory damages on Count III;

C. For an award of punitive damages in the amount of $350,000 on Count III;

D. For appropriate declaratory relief declaring the acts and practices complained of herein in violation of Title VII;

E. For equitable relief including reinstatement, or front pay in lieu of same;

F. For an award of reasonable attorneys' fees and costs, including expert witness fees expended; and

G. For such other and further relief to which Plaintiff may show she is justly entitled.

**TRIAL BY JURY IS DEMANDED**

                                                      Respectfully submitted,
                                                      VIRGINIA WILLIAMS

                                                      _/s/ *Paul M. Falabella*_

Harris D. Butler, III (VSB No. 26483)
Paul M. Falabella (VSB No. 81199)
BUTLER ROYALS, PLC
140 Virginia Street, Suite 302
Richmond, Virginia 23219
Telephone: (804) 648-4848
Facsimile: (804) 237-0413
Email: harris.butler@butlerroyals.com
paul.falabella@butlerroyals.com